

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | |
|---|---|
| **Thomas Gilbert,** <br>       **Employee,** <br> **v.** <br> **United Parcel Service, Inc.** <br>       **Employer,** <br> **And** <br> **Liberty Mutual Insurance Company,** <br>       **Carrier.** | **Docket No.: 2016-06-0832** <br><br> **State File No.: 33590-2016** <br><br> **Judge Kenneth M. Switzer** |

## EXPEDITED HEARING ORDER

This case came before the undersigned workers' compensation judge on July 6, 2016, on the Request for Expedited Hearing filed by the employee, Thomas Gilbert, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is whether Mr. Gilbert sustained a new, compensable aggravation of his preexisting condition or a continuation of his previous work injury.

For the reasons set forth below, the Court finds Mr. Gilbert has shown a likelihood of success in proving at a hearing on the merits that he sustained a new, gradually-occurring injury. He is entitled to medical benefits, but has not shown entitlement to temporary total disability benefits at this time. Further, while Mr. Gilbert has not shown entitlement to a statutory penalty regarding the employer's failure to provide timely temporary disability benefits, the Court refers the matter to the Bureau's Compliance Unit for consideration of whether penalties are appropriate for the Employer, United Parcel Service, and the carrier, Liberty Mutual, regarding delays in filing a First Report of Injury and Notice of Denial.[1]

### History of Claim

Mr. Gilbert is a fifty-four-year-old resident of Maury County, Tennessee. He has

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

worked for UPS as a package car driver for approximately sixteen years. In that capacity, he is occasionally required to lift items weighing up to seventy pounds and to "stair climb." (Ex. 9.) Mr. Gilbert estimated he climbed into his work truck approximately 150 to 200 times per day, five days per week, stepping up approximately eighteen inches with his left leg first as the "normal motion" each time.

Mr. Gilbert sustained a work-related injury to his left knee on May 9, 2011, while working for UPS. Dr. David Moore, the authorized treating physician, performed an arthroscopic partial medial meniscectomy and chondroplasty and ultimately released him to work in October 2011, assigning a two-percent permanent partial impairment rating. (Ex. 1 at 16-17.) The parties entered into a settlement agreement, which the Circuit Court for Maury County approved on February 3, 2012, providing lifetime medical benefits for the injury. (Ex. 3, A-C.)

Pursuant to the agreement, Mr. Gilbert continued to receive authorized care from Dr. Moore. He administered injections in October and November 2011, as well as April, August and December 2012. (Ex. 1 at 17, 21, 26, 29, 31.) Mr. Gilbert testified the left-knee condition improved over time and he stopped seeing Dr. Moore in December 2012 "because the pain was gone and I could function normally." Regarding whether he felt "manageable discomfort" after ceasing treatment with Dr. Moore until returning to seek treatment in 2015, Mr. Gilbert explained, "You can ask just about any driver that drives a package car for UPS, there is some discomfort in the knees and back throughout the day, every day you work. So yes, there is, to some extent, manageable discomfort."

Mr. Gilbert testified he had no problems with his left knee in 2013 and 2014, but in approximately April or May 2015, he began experiencing pain in his left knee when climbing into the truck. Once the pain intensified, he returned to Dr. Moore. Notes from a July 23, 2015 visit document the onset of moderate medial compartment osteoarthritis. (Ex. 1 at 36.) The notes state:

> Dr. Moore does think that he has simply aggravated that, which has caused the increase in pain and swelling to his knee. He does think the compression of his medial compartment osteoarthritis is directly related to his medial meniscus tear that was caused by his initial work-related injury in May of 2011.

*Id.* Dr. Moore echoed that opinion at a visit in October 2015. *Id.* at 37. Mr. Gilbert received injections for pain at both visits.

In January 2016, Dr. Moore recommended a total knee replacement and referred Mr. Gilbert to Dr. Gregory Raab, an arthroplasty specialist. *Id.* at 44. Notes from that visit state, "My impression is that his [need] for a total knee arthroplasty is directly related to his meniscal injury." *Id.* Dr. Raab saw Mr. Gilbert on April 22, 2016, noting

2

his history of surgery and opining:

> [Mr. Gilbert] had been doing reasonably well until more recently, and over the last several months has had significant increase in his symptoms with pain worsening, both medially and anteriorly with stairs. He now describes the pain is constant. He has difficulty walking. He has difficulty with stairs, which is challenging given the patient's job as a UPS driver, where he is constantly in and out of his vehicle loading and unloading.

*Id.* at 45. Dr. Raab agreed the knee replacement is necessary, reading x-rays and concluding: "Four views of the left knee from 01/07/2016 reveal a severe bone-on-bone medial compartment arthritis and moderate patellofemoral arthritis. This is a progression from x-rays both In [sic] July 2015, as well as significant progression since January 2012." *Id.* at 48.

Mr. Gilbert's counsel sent a causation letter on April 26, 2016, to Dr. Moore. (Ex. 7.) In relevant part, it reads as follows:



1. Has Mr. Gilbert sustained an aggravation of his specific left injury as a result of repetitive climbing into the truck during his job as a UPS driver?
   (Yes) No    His meniscal tear on this side likely led to progression of his OA.

2. Is this aggravation at least 51 percent cause of his current need for knee replacement?
   (Yes) No    See above.

3. Are the above opinions to a reasonable degree of medical certainty?
   (Yes) No

(Ex. 7 at 2.)

Mr. Gilbert learned of Dr. Moore's response on May 2, 2016. Records confirm he telephoned his supervisor, Richard Bonee, on that date. (Ex. 10.) According to Mr. Gilbert, he told Mr. Bonee he suffered a new, cumulative-trauma injury. Mr. Bonee acknowledged he characterized the injury in that manner, and that Mr. Gilbert telephoned him again on May 4, 2016, to report a new injury. Mr. Gilbert's counsel followed-up with a May 5, 2016 letter entitled "Notice of Injury" to Mr. Bonee. (Ex. 11.) Mr. Bonee admitted receiving the letter. He filed a First Report of Injury on June 22, 2016, only after the adjuster told him to do so.

Mr. Gilbert's last day worked was May 6, 2016, according to the Affidavit of Doug Grissom, his supervisor. (Ex. 5 at 2.) Mr. Grissom observed him limping that

3

morning and, after consulting with Mr. Bonee, sent him home. Mr. Gilbert testified he remains under UPS' employ, but UPS will not allow him to work until released by a physician after surgery. UPS paid no temporary disability benefits.

Liberty Mutual, UPS' carrier, sought utilization review regarding the knee replacement, which surgery was certified as medically necessary on May 5, 2016. (Ex. 3 at 2.) Liberty Mutual authorized the procedure and scheduled it to take place on July 12, 2016. *Id.* at 3. However, Mr. Gilbert cancelled the surgery on June 10, 2016, expressing concern that having surgery as authorized under the previous settlement would have a negative effect in his subsequent claim.

Mr. Gilbert filed a Petition for Benefit Determination (PBD) seeking medical and temporary disability benefits on May 5, 2016. The parties did not resolve the disputed issues through mediation, and the mediating specialist filed a Dispute Certification Notice (DCN) on June 2, 2016. Mr. Gilbert filed a Request for Expedited Hearing on June 10, 2016, and an affidavit on June 15, 2016. UPS filed its "Opposition" to the hearing request on June 23, 2016. On that same day, Mr. Gilbert filed a "Petition for Penalties."

At the expedited hearing, Mr. Gilbert asserted the 2011 injury resulted in a condition that he gradually aggravated over the course of the next five years of work, resulting in a new, continuous-trauma injury and the need for a knee replacement. Dr. Moore's causation letter supports this argument. Mr. Gilbert has been unable to work since UPS sent him home on May 6, 2016. He has been without income since that date and is entitled to temporary disability benefits. UPS' failure to pay temporary disability benefits entitles him to a penalty and an award of attorney fees.

UPS countered the alleged injury is a direct, predictable consequence of the May 2011 injury.[2] The medical records from 2011 through 2015 document Mr. Gilbert experienced left-knee pain throughout, while they do not state he mentioned climbing into his truck as exacerbating his pain. Mr. Gilbert is entitled to medical benefits – specifically, a knee replacement – under the 2012 settlement agreement, which surgery it authorized. Because this is not a new injury, no temporary disability benefits are owed.

### Findings of Fact and Conclusions of Law

*Admissibility of Dr. Raab's Response to Adjuster*

Before addressing the merits of Mr. Gilbert's claim, the Court first addresses UPS' introduction into evidence of a fax from adjuster Sarah Moore to Dr. Raab dated May 4, 2016. The fax contains an unsigned, handwritten response to questions addressing

---

[2] UPS additionally asked the Court to deny Mr. Gilbert's hearing request in its Opposition to Motion for Expedited hearing, but did not raise the objection at the hearing. The Court considers it waived.

4

causation. A copy of the fax was referenced in Ms. Moore's affidavit (Ex. 3) and was attached to the DCN. The Court heard both parties regarding its admissibility, marked it for identification only and reserved ruling.

The Court finds the fax inadmissible. Tennessee Code Annotated section 239(c)(1) (2015) provides the Rules of Evidence shall govern proceedings at all hearings before a workers' compensation judge unless an alternate procedural or evidentiary rule has been adopted by the administrator, and that when a rule adopted by the administrator conflicts with the Rules of Evidence, the rule adopted by the administrator shall apply. Tennessee Compilation Rules and Regulations 0800-02-21-.16(6)(b) (2015) states, "All medical records signed by a physician . . . shall be admissible." Dr. Raab's purported response is unsigned; therefore, without other assurances of authenticity, it is inadmissible.

The Court is unpersuaded by UPS' argument that its inclusion as an exhibit to its adjuster's affidavit is sufficient authentication under the "return letter doctrine." UPS did not cite case law where a Tennessee appellate court adopted or favorably treated the reply doctrine.[3] The Court additionally found no such authority. Moreover, according to the adjuster's affidavit, the fax has been in Liberty Mutual's and/or UPS' possession since May 24, 2016, well in advance of the expedited hearing. UPS could have taken additional steps to assure its admissibility but failed to do so. Further, even if the fax were admissible, the Court finds the document's probative value weighs against UPS because Dr. Raab wrote he is "unable to determine" what percentage of Mr. Gilbert's need for knee replacement surgery is related to the 2011 work injury.

*Compensability*

In order to grant or deny Mr. Gilbert's requested relief, the Court must apply the following legal principles. In general, Mr. Gilbert, as the employee, bears the burden of proof on all prima facie elements of his workers' compensation claim. Tenn. Code Ann. § 50-6-239(c)(6) (2015); *see also Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). Mr. Gilbert need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Rather, at an expedited hearing, Mr. Gilbert has the burden to come forward with sufficient evidence from which this Court can determine he is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard does not relieve Mr. Gilbert of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of

---

[3] The Court believes counsel's reference to the "return letter doctrine" is actually the reply doctrine. "[L]etters and presumably telegrams are prima facie authentic if their content is responsive to prior properly admitted communications." *U.S. v. Weinstein*, 762 F.2d 1522, 1533 (11th Cir. 1985).

employment at the expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a "preponderance of the evidence." *See Buchanan,* 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6.

Applying these legal principles to the facts of this case, the Court first considers whether Mr. Gilbert is likely to prevail at a hearing on the merits regarding the compensability of his claim. Generally, to be compensable, an injury must arise primarily out of and in the course and scope of employment and must cause death, disablement, or the need for medical treatment of the employee. Tenn. Code Ann. § 50-6-102(14) (2015). The Workers' Compensation Law and case law provide for the compensability of gradually-occurring aggravations of preexisting conditions. The Workers' Compensation Appeals Board explained:

> An "accidental" injury generally does not include the aggravation of a pre-existing condition "unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A). Thus, in order to establish a compensable aggravation as part of the accidental injury, an employee must prove by a preponderance of the evidence that the employment contributed more than fifty percent in causing the aggravation. *See also Miller v. Lowe's Home Centers, Inc.,* No. 2015-05-0158, 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *13 (Tenn. Workers' Comp. App. Bd. Oct. 21, 2015) ("[A]n employee can satisfy the burden of proving a compensable aggravation if: (1) there is expert medical proof that the work accident 'contributed more than fifty percent (50%)' in causing the aggravation, and (2) the work accident was the cause of the aggravation 'more likely than not considering all causes.'"). Under such circumstances, the injured worker qualifies for medical treatment "made reasonably necessary by [the] accident." Tenn. Code Ann. § 50-6-204(a)(1)(A) (2015).

*Sanker v. Nacarato Trucks, Inc., et al.,* No. 2016-06-0101, 2016 TN Wrk. Comp. App. Bd. LEXIS 27, at *8-9 (Tenn. Workers' Comp. App. Bd. July 6, 2016).

Here, the Court finds Dr. Moore unambiguously opined Mr. Gilbert sustained an aggravation of his left-knee injury "as a result of repetitive climbing into his truck as a driver for UPS." He further noted, "His meniscal tear on this side likely led to progression of his OA." Dr. Moore also opined the aggravation was "at least 51 percent cause" of his current need for a knee replacement and that his opinions are to a reasonable degree of medical certainty. In addition, while Dr. Moore's earlier treatment notes document Mr. Gilbert conveyed that "walking" exacerbates his pain, Dr. Raab's treatment note clearly states, "He has difficulty with stairs, which is challenging given the patient's job as a UPS driver, where he is constantly in and out of his vehicle loading and

6

unloading."

UPS takes issue with the phraseology of Mr. Gilbert's causation letter offering background on the case in a manner that, arguably, is sympathetic to Mr. Gilbert. However, there is no evidence to suggest Dr. Moore relied on that language in the causation letter when stating his opinion. Therefore, at this time Mr. Gilbert has come forward with sufficient evidence from which this Court concludes he is likely to prevail at a hearing on the merits regarding the compensability of his claim.

*Medical Benefits*

The parties agreed Mr. Gilbert is entitled to medical benefits (the total knee replacement), whether it be pursuant to the settlement agreement of 2012 or this case. As Mr. Gilbert has shown a likelihood of success on the merits regarding whether he sustained a new, gradually-occurring injury, ordinarily this Court would order that UPS provide a panel of physicians pursuant to Tennessee Code Annotated section 50-6-204 (2015). However, it makes little sense to order a panel, given Mr. Gilbert's immediate need for a knee replacement, which Liberty Mutual previously authorized. Given Dr. Moore's familiarity with Mr. Gilbert's condition and history, he should remain the authorized treating physician, and thus his referral to Dr. Raab for the surgical procedure is approved and for that purpose. Dr. Raab is the authorized treating physician.

*Temporary Disability Benefits and Penalties*

Mr. Gilbert additionally requested temporary disability benefits. The Appeals Board reiterated the longstanding criteria for such an award as follows: "An injured worker is eligible for temporary disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability." *Jones v. Crencor Leasing and Sales,* No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015), *citing Simpson v. Satterfield,* 564 S.W.2d 953 (Tenn. 1978).

On the present record, the Court cannot order these benefits because neither Dr. Moore nor Dr. Raab restricted or removed Mr. Gilbert from work, thus he is not "disabled from working due to a compensable injury." The Court observes that Mr. Gilbert makes a logical argument that, since UPS knew his current circumstance and removed him from work for liability reasons, they should pay him temporarily disability benefits for this new injury. However, the Court is unaware of any authority for such "regarded as" disabled that applies to the Workers' Compensation Law. The Court's ruling does not preclude Mr. Gilbert from obtaining the requisite expert opinions regarding the above-referenced criteria and entering such an award at a later date, should the parties be unable to reach an accord on the question.

Finally, Mr. Gilbert seeks penalties under Tennessee Code Annotated section 50-6-205(b)(3)(A) (2015), which states:

> [I]f an employer . . . fails to pay, or untimely pays, temporary disability benefits within twenty (20) days after the employer has knowledge of any disability that would qualify for benefits under this chapter, a workers' compensation judge shall have the authority to assess against the employer . . . a civil penalty in addition to the temporary disability benefits that are due to the employee.

Mr. Gilbert additionally requested the Court amend the DCN so that he may be heard on the penalties issue. Tennessee Code Annotated section 50-6-239(b)(1) (2015) generally provides that only issues certified by the mediators with a DCN may be presented to the judge for adjudication. However, a judge may grant permission to present issues that have not been certified only upon finding: "The parties did not have knowledge of the issue prior to the issuance of the dispute certification and could not have known of the issue despite reasonable investigation; and . . . [p]rohibiting presentation of the issue would result in substantial injustice to the petitioning party." Tenn. Code Ann. § 50-6-239(b)(2)(A)-(B) (2015).

As explained at the expedited hearing hearing, under certain circumstances, the Court's authority to issue penalties is authorized by the Workers' Compensation Law. *See* Tenn. Code Ann. §§ 50-6-205(b)(3)(A) (2015) and 50-6-118(d) (2015). The Court finds that, since its authority to exact penalties is statutory, the mediator need not certify it as an issue for adjudication. Stated another way, the statute grants this Court inherent authority to issue penalties when the evidence supports it, regardless of whether the mediator certified penalties as an issue for adjudication.

In the alternative, the Court finds that, should certification as an issue of entitlement to penalties be required, in this case Mr. Gilbert failed to satisfy the criteria set forth in section 239(b)(2). In particular, he checked his eligibility to temporary disability benefits as an issue on the PBD filed May 5, 2016. Temporary disability benefits are again checked as an issue on the June 2, 2016 DCN, more than twenty days after UPS' knowledge of his alleged disability. Mr. Gilbert is represented by competent counsel who should have known of his potential eligibility for penalties regarding temporary disability benefits before that time. Also, the Court cannot find that prohibiting presentation of the issue would result in substantial injustice to Mr. Gilbert.

In light of the Court's finding that Mr. Gilbert failed to satisfy his burden regarding the criteria for temporary disability benefits, the Court rejects Mr. Gilbert's claim for penalties under Tennessee Code Annotated section 50-6-205(b)(3)(A) (2015) or 50-6-118(d) (2015). Likewise, the request for attorney's fees under Tennessee Code Annotated section 50-6-226(d) is denied because UPS did, in fact, authorize the requested

medical treatment under the previous settlement.

However, the Court is mindful of Mr. Bonee's testimony that Mr. Gilbert reported the injury on May 2, 2016, but Mr. Bonee did not complete a First Report of Injury until June 22, 2016. Neither party introduced this form or a Notice of Denial of Claim for Compensation into evidence.

The "Claims Handling Standards" state, "[E]mployers shall report verbally or in writing all known or reported accidents to their insurer within one working day of knowledge of injury." Tenn. Comp. R. & Regs. 0800-2-14-.03(1) (2015). Further, "Decisions on workers' compensation insurance coverage and compensability shall be made within fifteen (15) days of verbal or written notice of accident. . . . Claimants and employers shall be notified of the decision of compensability within fifteen (15) days of verbal or written notice of accident." Tenn. Comp. R. & Regs. 0800-2-14-.04(7) (2015). Also, "In addition to other penalties provided by applicable law and regulation, violations of any of the above rules shall be subject to enforcement by Commissioner of the Tennessee Department of Labor pursuant to TCA §50-6-419(c)." Tenn. Comp R. & Regs. 0800-2-14-.08(1) (2015).

Upon its issuance, a copy of this Order will be provided to the Compliance Unit in accordance with Tennessee Compilation Rules and Regulations 0800-02-24-.03 (2015) The Court reasonably believes there may have been a violation of the Bureau's rules.

**IT IS, THEREFORE, ORDERED** as follows:

1. UPS or its workers' compensation carrier shall provide Mr. Gilbert with medical treatment, including the knee-replacement surgery, as required by Tennessee Code Annotated section 50-6-204 (2015). Mr. Gilbert or the authorized medical providers shall furnish medical bills to UPS or its workers' compensation carrier for prompt payment.

2. Mr. Gilbert's request for past-due and ongoing temporary disability benefits and related attorney's fees and penalties is denied at this time.

3. This matter is set for an Initial (Scheduling) Hearing on September 15, 2016, at 8:30 a.m.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment

9

for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 12th day of July, 2016.**

_____
Judge Kenneth M. Switzer
Court of Workers' Compensation Claims

<u>Initial (Scheduling) Hearing:</u>

An Initial (Scheduling) Hearing has been set with **Judge Kenneth M. Switzer, Court of Workers' Compensation Claims. You must call 615-532-9552 or toll-free at 866-943-0025 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

<u>Right to Appeal:</u>

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying

the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

11

## APPENDIX

Exhibits:
1. Medical Records
2. Affidavit of Thomas Gilbert
3. Affidavit of Sarah Moore
   - A. Joint Petition and Settlement Agreement
   - B. Affidavit of Thomas Gilbert
   - C. Agreed Order
   - E. Moore emails[4]
4. Affidavit of Erik Robling
5. Affidavit of Doug Grissom
6. Wage Statement
7. Causation letter
8. UPS Physical Demand Assessment
9. Adjuster fax to Dr. Raab (Admitted for identification purposes only)
10. Telephone record
11. Counsel's notice of injury to UPS

Technical record:[5]
1. Petition for Benefit Determination, May 5, 2016
2. Dispute Certification Notice, June 2, 2016
3. Request for Expedited Hearing, June 10, 2016
4. Position Statement, Injured Worker, June 10, 2016
5. Permission to Add Penalties to Issues to be Heard by the Court, June 23, 2016
6. Petition for Penalties, June 23, 2016
7. Opposition to Motion for Expedited Hearing, June 24, 2016
8. Opposition to the Motion Filed by Employee titled "Permission to Add Penalties to Issues to be Heard by the Court," and Exhibits, June 30, 2016
9. Supplemental Pre-Hearing Memorandum of Employer and Carrier, July 4, 2016
10. Plaintiff's Response to Defense Supplemental Memorandum, July 5, 2016

---

[4] The Affidavit as filed additionally contained medical records marked as Exhibit D, which the Court extracted because they are already in evidence as Exhibit 1.

[5] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 12th day of July, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Constance Mann, Employee's Counsel | | | X | cmannlaw@msn.com |
| David Hooper, Employer's Counsel | | | X | dhooper@hopperzinn.com |
| Compliance Unit | | | X | WCCompliance.Program@tn.gov |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**